**MOHAWK PETROLEUM CORPORA-TION, INC., a corporation,**
**Plaintiff,**

v.

**DEPARTMENT OF the NAVY et al.,**
**Defendants.**

**No. CV 75–3156–AAH.**

United States District Court,
C. D. California.

May 28, 1975.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

Plaintiff having filed its complaint for declaratory and injunctive relief herein on April 21, 1975 and having on said date moved this Court for preliminary injunction and for advancement of trial and consolidation, and this Court having scheduled said motions for hearing on May 5, 1975, and thereafter continued said hearing to May 12, 1975 at the hour of 9:30 a. m., and defendants having filed a memorandum and an affidavit and certain exhibits in opposition to said motion for preliminary injunction, and

The cause having duly come on for hearing on May 12, 1975, and plaintiff appearing by its counsel, Girvan Peck and Morrison & Foerster, San Francisco, Cal., and defendants appearing by their counsel, John H. Broadley, Dept. of Justice, Washington, D. C., and John Nordin, Asst. U. S. Atty., Los Angeles, Cal., and said parties having stipulated through their attorneys that trial on the merits be advanced and consolidated with the hearing on plaintiff's motion for preliminary injunction, and the Court, having received evidence and heard argument and being fully advised, hereby makes the following:

## FINDINGS OF FACT

1. Plaintiff Mohawk Petroleum Corporation, Inc., (hereinafter "Mohawk") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California. It is a small refiner of crude oil, operating one refinery located at Bakersfield, California, and a marketer of petroleum products, largely within the State of California.

2. Defendant Department of the Navy (hereinafter "the Navy") is a department and instrumentality of the United States under the Act of August 10, 1956, c. 1041, 70A Stat. 1, 10 U.S.C. § 5001 et seq. ("Armed Forces Act"). The Navy is made responsible for the administration of the Naval Petroleum and Oil Shale Reserves by the Act of August 10, 1956, c. 1041, 70A Stat. 457, 10 U.S.C. § 7421 et seq., as amended Oct. 11, 1962, Pub.L. 87–796, § 1, 76 Stat. 904.

3. Defendant Jack L. Bowers (hereinafter "Bowers") is Acting Secretary of the Navy for Naval Petroleum and Oil Shale Reserves.

4. Defendant Federal Energy Administration (hereinafter "FEA") is an agency and instrumentality of the United States created by the Federal Energy Administration Act of 1974 ("Administration Act"), 15 U.S.C. § 761 et seq. It was implemented by Executive Order No. 11,790 (June 27, 1974). FEA is responsible for the administration of the Emergency Petroleum Allocation Act of 1973, as amended ("Emergency Act"), 15 U.S.C. § 751 et seq. This responsibility previously was exercised by the Federal Energy Office ("FEO"), established by Executive Order No. 11,748, 3 C.F.R. § 376 (Supp.1974).

5. Defendant Frank G. Zarb (hereinafter "ZARB") is Administrator of FEA. The authority which the Emergency Act vests in the President was delegated to the Administrator by Executive Order No. 11,790 (June 27, 1974).

6. On or about May 7, 1970 Mohawk entered into a contract with the Navy, a copy of which is attached to the complaint as Exhibit "A", for the purchase of all of the daily production of crude oil

lying outside the areas then subject to the terms of a certain Unit Plan Contract and made available for disposition by the Navy from Naval Petroleum Reserve No. 1, known as the "Elk Hills Reserve", for a five-year period. Mohawk has been purchasing approximately 600 barrels of crude oil per day under the terms of said contract. The contract expires by its terms after the close of business on May 14, 1975.

7. The Armed Forces Act, 10 U.S.C., Chapter 641, § 7421 et seq., grants to the Secretary of the Navy the power and the duty to conserve and maintain certain reserves of crude oil and gas, and to regulate the production and use thereof as a national resource. Section 7430 provides that any sales of such oil and gas shall be made at public sale to the highest qualified bidder.

8. The Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 et seq., grants to the President the emergency power to allocate petroleum products and to regulate the price of such products. The powers so granted were delegated by the President to the Federal Energy Office ("FEO") and thereafter, so far as pertinent herein, to FEA. FEO adopted a price regulation relating to petroleum products on December 27, 1973 and republished the same on January 15, 1974, 10 C.F.R. Part 212. Accompanying mandatory allocation regulations provided that all supplier/purchase relationships in effect on December 1, 1973 must remain in effect for the duration of the program, 10 C.F.R. § 211.63. On April 2, 1974, following a public rulemaking proceeding FEO removed a preexisting exemption for Federal, State and local governments and provided that all government agencies, including all Federal departments, agencies or other instrumentalities were subject to the price regulation, 10 C.F.R. § 212.52, 39 Fed.Reg. 12252. Such regulations, as so amended, remain in full force and effect.

9. At some time following the adoption of such mandatory allocation and price regulation the Navy commenced to assert that the Emergency Petroleum Allocation Act, and regulations pursuant thereto, did not apply to sales from any of its reserves, while at the same time the FEO and the FEA have asserted to the contrary. Until recently the Navy has nevertheless offered to and now has continued to supply Mohawk at FEA-controlled prices.

10. On or about February 28, 1975 the Navy invited bids for the purchase of crude oil from the Elk Hills Reserve, including the oil currently under contract to Mohawk. The Navy now intends to award the contract for the purchase of said oil, from and after May 14, 1975, to a company other than Mohawk, which company has bid higher than the prices permitted by the mandatory price regulation of FEA. If such an award is made, Mohawk will be unable to obtain a similar quantity of price-controlled oil from any other source, and will either be required to operate its refinery below capacity or purchase an equivalent supply at a non-controlled price. Mohawk will be unable to recoup the loss so occasioned, and will suffer irreparable injury.

11. There is no evidence that Congress intended to exempt sales of crude oil from the Naval Reserves from the regulations adopted under the Emergency Petroleum Allocation Act of 1973 and the Court finds that no such exemption was intended.

12. Application of the Emergency Petroleum Allocation Act to the Naval Petroleum Reserves may entitle Standard Oil of California to draw more oil from those reserves under the provisions of section 5(f) of its contract (NOd–4219) with the Department of the Navy than would be the case if the Allocation Act and the price control regulations thereunder did not apply to those reserves. However, there is no evidence that the application of the regulations adopted under the Emergency Petroleum Allocation Act of 1973 to sales of crude oil from the Naval Reserves will substantially injure or adversely affect the con-

servation and maintenance of such reserves or otherwise injure substantially or have any substantially adverse effect upon the public interest, and the Court finds that no such substantial injury or substantially adverse affect will occur.

13. The effect of an injunction requiring the Navy to comply with FEA regulations and to continue to supply Mohawk at FEA-controlled prices will be to maintain the *status quo* during the period of the present emergency and to assist in maintaining the economic viability of a small refiner during such period, as intended by Congress in its enactment of the Emergency Petroleum Allocation Act of 1973.

14. There is a subsisting controversy between the plaintiff Mohawk and the defendants, the Navy and Bowers, respecting the application of FEA regulations to said defendants.

15. On all of the evidence presented the equities favor the application of the plaintiff Mohawk for a permanent injunction requiring the Navy to continue to supply Mohawk with crude oil under the existing contract, and to comply with FEA price regulations until and unless such regulations are validly modified or amended.

From the foregoing findings of fact and from the statutes, executive orders and regulations under consideration in this matter the Court makes the following:

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1391(e), and under Section 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 et seq. and statutes referred to therein. Venue is properly laid in this District under 28 U.S.C. § 1391(c).

2. The parties have duly appeared and consented to trial on the merits in this matter, and the cause is ripe for final decision and judgment.

■ 3. The Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 et seq., was intended to grant and did grant power to the President, and to the agencies to which he might delegate such power, to allocate all domestically produced crude oil and other petroleum products, and to fix the price of all such domestically produced crude oil and other petroleum products, whether or not such products were produced by a governmental agency or instrumentality, and Congress did not in such Act intend or provide any exemption for the Navy with respect to the Naval Petroleum Reserves.

■ 4. The provision of the Armed Forces Act requiring competitive bidding, 10 U.S.C. § 7430(b), constitutes neither a special statute nor a necessary part of the grant of power to the Secretary of the Navy to conserve and maintain the Naval Petroleum Reserves as set forth in the said Act, 10 U.S.C. § 7421 et seq., but on the contrary constitutes an administrative provision respecting the determination of price on sales of crude oil and gas by the Navy, and as such is superseded by the price controls provided by the Emergency Petroleum Allocation Act of 1973 and regulations pursuant thereto.

5. There is a valid and subsisting controversy between the plaintiff Mohawk and the defendants, the Navy and Bowers, and Mohawk is entitled to a judgment declaring that said defendants have been and remain subject to the regulations of FEA until and unless said regulations are validly modified or amended to exempt said defendants.

■ 6. Mohawk will suffer irreparable injury if an injunction is not granted as prayed, and neither the defendants nor the public will suffer injury if said injunction is granted, and as a matter of law and upon a balancing of the equities the plaintiff Mohawk is entitled to a judgment requiring the defendants, the Navy and Bowers, to continue supplying crude oil from the Elk Hills Reserve under the existing contract between said parties, at the price permissible under FEA regulations, and

enjoining said defendants from awarding a contract for the purchase of said crude oil to any other purchaser, until and unless said FEA regulations are validly modified to exempt said defendants from said requirements, all in accordance with and pursuant to the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 et seq.; the Federal Energy Administration Act of 1974, 15 U.S. C. § 761 et seq.; Executive Order No. 11,790 of June 25, 1974, 39 Fed.Reg. 23185–23187, 15 U.S.C. § 761, note; and regulations issued by the FEA under and pursuant thereto, particularly 10 C. F.R. 211.63, 39 Fed.Reg. 35525, September 25, 1974, and 10 C.F.R. 212.52 as amended, 39 Fed.Reg. 12255, April 2, 1974.

7. Plaintiff Mohawk is entitled to an injunction effective immediately, and the said judgment shall provide that said injunction is effective May 12, 1975 at 11:45 A.M.